May it please the court. My name is Pat Swann and I represent the appellant Peter Longanbach. I'm here today with San Diego Deputy County Counsel Morris Hill, who represents the County of San Diego and the other individual defendants, appellants, other than Mr. Jeff O'Brien, who is represented by Mr. Jeff Carver, who is seated to my left. Mr. Hill and I will do the argument. We would ask to split the argument and reserve five minutes. My client, Mr. Longanbach, was the Deputy District Attorney assigned to prosecute Mr. Genzler. He was assigned to the case after Mr. Genzler was identified as the suspect and surrendered and was arrested and booked into the jail for murder. A preliminary hearing was set and pursuant to the preliminary hearing, Mr. Longanbach met with a key witness, Sky Blue Flanders, who had witnessed the murder in Ocean Beach. Mr. Longanbach presented Ms. Flanders as a witness at the preliminary hearing. She testified, and the case then proceeded on after probable cause was found by the court. Subsequently, Mr. Genzler has sued Mr. Longanbach for 1983 violations. We move for summary judgment, and our summary judgment was granted in full except as to a single paragraph, paragraph 66, which alleges that in preparing Ms. Flanders for her preliminary hearing testimony, Mr. Longanbach suborned perjury, that he asked her to testify falsely about what occurred the night of the murder and about the victim's prior history. In the court below, Mr. Longanbach argued that the meeting with Ms. Flanders to prepare her for a preliminary hearing was part of presenting the state's case, was abogatory in nature, and therefore absolutely immune. Unfortunately, the district court held otherwise and went off on a tangent. The tangent was that the district court found that because his actions on part of Mr. Longanbach occurred before the preliminary hearing and before probable cause was established, that absolute immunity could not apply. We believe that holding is erroneous, and if it's not reversed by the court, it will subject prosecutors throughout the state to liability for any actions taken prior to a finding of probable cause at a preliminary hearing or, for that matter, a finding of probable cause by a grand jury. Is this purely a question of timing? What happens, and I'll ask you to concede for purposes of argument, that there was suborning of perjury? Now, there may not have been, but solely for the purpose of this question. What happens if we had had by Attorney Longanbach and by Investigator O'Brien subornation of perjury of Sky Blue Flanders prior to arrest? Different answer? The answer would be the same. If at that point in time there was probable cause to arrest Mr. Gensler. Even though there had been no arrest? That's correct. And what if there was no probable cause to arrest, and in fact the perjury produces the, if I can say it this way, the probable cause? That would be a different case, and I would not be here arguing for absolute immunity. Can you help me understand? I mean, partly we're stuck with some lines that the Court has told, the Supreme Court has told us to draw. They're a little difficult to draw sometimes. I mean, the activity is the same. As we move back in time, we're interviewing a potential witness, and we're suborning perjury by that witness. In one circumstance, it's investigatory. In another circumstance, it's preparing for trial. I have to say that if it's suborning perjury, that's not investigatory ever. It's simply suborning perjury. It's the manufacturing of evidence. Isn't that right? How can that ever be investigatory if you're suborning perjury? Well, the distinction the courts draw is at what stage of the proceedings. Is the prosecutor serving as an advocate for the State and presenting the State's case, or is the prosecutor serving as an investigator or an administrative role? Now, if the Court, if I understand the Court's question, is saying how could, at the very front end of an investigation, a prosecutor be acting as an investigator if they're suborning perjury? That's right. That is not striking as an investigation. That strikes me as manufacturing of evidence. And in either case, it would not be subject to absolute immunity. But not because they're investigating, but because there's something else going on? No, because at least, at best, they're investigating. Here, the criminal proceedings have been initiated. The preliminary hearing was scheduled. Let me ask it in a different way. I know, I pretty much know the case law, but I'm struggling with the labels the Court has told us to attach to these things. How can a lawyer who is suborning perjury be acting as an advocate? That is to say, that's so inconsistent with the sworn duty of an advocate. How can the person be acting as an advocate when he is suborning perjury? The policy considerations that went into the Emler decision, and the Emler decision involved allegations that the prosecutor presented perjury testimony. That's right. And the prosecutor was held absolutely immune. And the Court weighed the policy considerations, and the policy considerations that prevailed was that prosecutors who sometimes need to put forward questionable witnesses, questionable veracity, should not be subject to suits by the defendant for doing so. Right. But that wasn't subordination of perjury. That was the allegation in Emler. And we have the same kind of allegation here by a witness who later. . . started out saying one thing, and Longenbach said, oh, you know, if you say that, that's going to hurt our case. Isn't that what happened? It's hard to tell from Ms. Flanders' testimony. She's testified a half dozen or more times and has changed. . . Let's say it happened that way. That in preparing for the preliminary hearing, to take the facts as alleged, that he sat and told her, if you testify that way, it's going to hurt the government's case. That is still absolutely immune under the law of Emler. I guess part of my problem is that the labels that the Court gives us. . . It's shocking, you know. It's shocking. It may be, but the policy considerations. . . I don't care what the policy considerations are. It's shocking. I have some problem with the. . . I understand your argument well that he's serving an advocate for the State. It doesn't matter whether it's before a preliminary hearing or it's after an indictment. The problem with this case, though, is that it's before a preliminary hearing where the facts are going to be washed in the preliminary hearing. And they're all. . . It's going to hang out at the preliminary hearing. And it sparks me as being somewhat investigative rather than presenting the State's case for a prosecutor to want to, through subordination of perjury, to change the facts. He wants a witness to change the facts. And when you're looking at facts, you're talking about investigating a case, not presenting the State's case. So I make. . . It would be a lot easier case for me, and I understand and agree with the public policy that the prosecutor must have this absolute immunity, even if he's an outright suborder. But I don't think it's something that should be pushed to the ultimate. And you have here a man who's going into a preliminary hearing. The defendant's going into a preliminary hearing. And the prosecutor is changing the facts under which that defendant will be bound over or not. And that sort of, to me, might cross the line into investigation when the prosecutor wants to have her testify as to the prior viciousness of someone when she really doesn't have that as her, at that time, did not have that as her position. And why shouldn't I view that as being investigative? Because he's really looking at facts, changing facts. I don't see that as an investigative activity. Mr. Longbach, when he meets with one of the two eyewitnesses to the murder to prepare her for a preliminary hearing, is acting as an advocate for the State. He's bound to do his job right. He has to meet with witnesses. He has to talk to them. He has to prepare them for their testimony. It's not investigative. At that point in time, there was probable cause to arrest Mr. Gensler. The police had fully investigated the crime, taken evidence, taken statements, interviewed Ms. Flanders on videotape. But you don't deny that he's trying to change the facts that are in his file to facts that are different that wouldn't be facts if the lady goes along with the testimony that he wants her to falsely state. That's the allegation. That's the allegation. You don't acknowledge it, and we can't speak to it, of course. Right. But nonetheless, it's the prosecutor which is trying to change the facts that are given to him in his file as he goes into the preliminary hearing. And that's why I have a little problem in thinking maybe this is not just presenting the State. If he's presenting the case, and we've all prepared witnesses for you go, and you go over their statement, or you go over what they're going to say, and you might give them some hints, but do you tell them, hey, look, I want you to testify to ABC, not to XYZ. And it seems to me that's facts of investigative issue. Investigating something, you're trying to ferret out, you're marshalling facts. And that's what he's doing here, in effect. He's marshalling facts, false facts, but nevertheless, he's changing a story. Why isn't that investigative and not presenting the case? I don't see how it can be investigative. How could it be presenting the case? Because he is presenting, preparing a witness to present a preliminary hearing as the State's case. He's preparing a witness to present a false case. He is discussing the facts with her. No, he's not. He's discussing the facts so that she won't testify to those facts. That's the allegation. Yeah, that is the allegation. Yeah. But it's advocatory in nature, and it is absolutely immune under IMPER. Well, if it wasn't before a preliminary hearing, though. It was at trial. It was at trial. So we have a little different situation at trial. You go to trial, and you have a record in many cases of a preliminary hearing, or you have a grand jury testimony. Yeah. But here, the facts are finally going to come out on the clothesline and hang out for everyone to see at the preliminary hearing. Yeah, but you have the Milstein case. The Milstein case, the prosecutors were alleged to have misled, misadvised, and mischaracterized evidence before the grand jury. This court held that the grand jury was not in panel for investigative purposes but for purposes of returning an indictment, and that probable cause existed at the time the prosecutor did those alleged acts. What grand jury was that? It was a grand jury. Specifically which grand jury? It was a state grand jury investigating the crime. Here, the preliminary hearing wasn't for investigative purposes. It was part of the initiation of the criminal prosecution, and Mr. Longenbach was preparing a witness. Well, for a defendant, I can tell you, a preliminary hearing is certainly investigative. Yes, from their side, they're always seeking discovery. They want to know what you've got in your file, and what your client tried to do was change what you had in your file. That's the allegation, but the defense was allowed to cross-examine Ms. Flanders at the hearing, had her prior videotaped statement on the night of the murder, and had other documents regarding her statements. So they weren't hamstrung at the preliminary hearing. Mr. Gensler went on to trial and ultimately was convicted of involuntary manslaughter and convicted and sentenced to six years, which he served. There's no issue of whether or not he served. Which he had already served. No. In fact, after the second trial, he was remanded to custody to complete. Oh, he had not served the total time. He had not. He was bonded out between the first and second trials. Well, that's all irrelevant as to the issue of law before us, whether he's guilty or not guilty. It's relevant to the issue of probable cause, and that's why I raised it. I see my time is up, and I'll defer to Mr. Hill at this point. Thank you. Good morning, Your Honors. My name is Morris Hill. I'm representing the individuals Finkst, Thompson, and Pippin in this appeal. Mr. Finkst was the elected district attorney of San Diego County. Mr. Thompson was his second-in-command. Mr. Pippin was a division chief who was the immediate supervisor of Mr. Longenbach. The reason I'm here on this appeal this morning is because these three gentlemen were sued in their individual capacities. There's a lot of argument in this case about official capacity liability, whether there was a policy that prosecutors could run amok and do whatever they want. That's not this appeal. I wouldn't be here this morning if that were the issue. This is the reason I'm here is because these three gentlemen are sued in their individual capacity for individual damages, including punitive damages, and there's no allegation that they actually did anything up to the point that Mr. Gensler got convicted. Therefore, what's the causation? How could they have caused any of the damages if they just didn't do anything? Now, here's my puzzle with this one. As you can tell already from my question, I have trouble with the labels the Court has given us under which we're supposed to analyze qualified or absolute immunity. There is absolute prosecutorial immunity for sometimes called quasi-judicial or advocacy, but there is no absolute immunity but rather qualified immunity for investigative or administrative activities. Now, in one sense, of course, your three clients are administrators. And what if there is an allegation that in the course of their administrative activities, they have caused the behavior that results in the violation of rights of Mr. Gensler? Then we would want to look at the specific allegation, what they specifically did as administrators that somehow caused this. And what if the allegation is, for example, they have created through their administration of the office a climate in which this sort of behavior is encouraged, rewarded, promoted? That's an allegation that's easy to make and virtually impossible to say anything about except it didn't happen. But how do you prove something? But as I read the district judge's very short part of the order devoted to your client, she basically just has a paragraph at the end of her order. She says, you guys haven't said anything either. That's because there isn't anything out there. There are no cases that deal with the idea that a district attorney can be individually liable for things that, in this case, his subordinate is immune for. Now, the point you just made before about dividing it between administrative, investigatory, and prosecutorial labels, I'll admit that's a — Those are categories that are given to us. It's an artificial thing. And I think Judge Scalia wrote a concurring opinion in one of these cases. I think Kalina, in which he was critical of trying to pigeonhole things. Yeah. He wrote for himself, and I believe Justice Thomas. Right. And if you look at Buckley — well, Buckley doesn't really tell you, give you any help on the administrative duty side. But it talks about those investigatory — here's what Buckley said. A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution. That's very important. Are you quoting Scalia? No, no, no, no. You're quoting him. I'm quoting the majority opinion in Buckley. Okay. From page 73. I'm with you. And they're talking about administrative and investigatory duties that do not relate to the prosecutorial duties. So that's not to say that just because it's investigative, it's not within prosecutorial immunity. There's another step there. It has to be investigatory and not related to the prosecutorial function. Or administrative and not related. Or administrative and not related. I catch that. I understand the point. In this case, Mr. Gensler's only relationship with any of the defendants in this case is his what? He is a criminal defendant being prosecuted. He's not an employee. The administrative cases, you'll notice, all have to do with employee-employer relationship. Deputy DA or somebody gets fired. That's where you end up with no prosecutorial immunity for the administrative conduct. In this case, we have administrative conduct, arguably. Actually, in reality, no conduct at all. No knowledge. But let's assume we have it for the sake of argument. But it's related to prosecution. Because we're talking about policies that have to do with what? Prosecution. How people are prosecuted. Not with how they're supervised. They're supervised only in the sense that it relates to supervision only in the sense that I'm telling you, my subordinates, that you should go out and convict people at all costs. Well, that's prosecutorial. You can't say that's not related to the prosecutorial function. And that's where that quotation I just gave you from Buckley is. Well, how about the all costs? Doesn't that cut it back? Well, what does that mean? Well, I mean, on all costs. I mean, you can bribe them. You can do whatever you want. Fill in whatever blank you want. Beat them up? It's one of those allegations that's easy to make. And what do you do about it? It's an easy way to get around prosecutorial immunity. You just allege whatever you want, Judge Ferguson. And you could say it about a judge. You know, this judge wants to – this is a hanging judge. And so he shouldn't be immune. Well, let's not make this personal. No, no. It was not personal. I'm talking about theoretically you could have a judge who's a defendant in a lawsuit. And you want to get around judicial immunity by saying this judge is a hanging judge. But you're not merely talking about allegations. You are saying even if it is true and proven, nonetheless, there's absolute immunity. Because it's related to the prosecutorial function. Yeah, that's right. Yeah, so it's not just easy to allege. No. Let's say I can even prove it. You still say the prosecutor and the supervisors get off the hook. Yeah. So they get off from liability, from monetary liability under 1983. You've got other remedies.  The remedy is after six years I'm out of jail. Thanks a lot. Well, that would be – if we had an innocent plaintiff here, that would be an interesting point. But I'm after the underlying rule of law. And the underlying rule of law is, as you're arguing it, and you may well be right, that someone who has been wrongfully convicted based on prosecutorial misbehavior and bad administration by the supervisors, his remedy is after however long he's spent in jail, he gets his habeas, he brings his 1983, and he's dismissed. So his remedy is, well, here's your $15, whatever you get when you get out of jail. Thanks for spending the time with us. Goodbye. That's it. That's the remedy. That's – if any other rule, you end up with a situation where anybody at all can sue prosecutors and have a case where they're bringing prosecutors to trial. Well, but – I'm not mentioning any other alternative. But if there is – the allegation is made, and let's say it's true for the purpose of argument, that a culture is created in the office of this improper conduct on a – illegal conduct on the part of subordinates and people in the office, and it's rewarded, they're promoted and so forth. And that's the culture, and people in the office know that, and they go forward and they perform according to the dictates of the culture. Wouldn't that make the people that made the policy, that created the culture, aiders and abettors or conspirators or principals in what the subordinates do? Well, you know, that's a very – Without naming the specific constitutional amendment. Well, Judge Cowen, it's very interesting you brought it up that way because this gets us into the – you know, talking about categorizations and how you categorize things. This gets into the borderline between individual liability and official capacity liability. No, no. I'm not – I understand your brief very well, that they're being sued not in their official capacity individually, but on 1983, they're being sued now individually, not as public servants, but as individuals who created a culture whereby the people – and this was the administrative culture that they fermented. Right. And by reason of that culture, the subordinates went out and engaged in illegal conduct, and the subordinates may be immune from suit by reason of that – if they did it in the prosecution presenting the case, the government's case. But nevertheless, the culture was created by reason of a policy of administration and supervision, which is strictly administrative. Why shouldn't they be liable under some well-known theory of having created this culture? Well, it's – the simple answer is because even if it's administrative, it's administrative relating to how people get prosecuted. So if you – you know, it would be any dream for anybody who wants to sue a prosecutor if you can't – Well, I don't buy that. You're defining prosecution so broadly as to make everything prosecution. I don't – to me, the ground rules of a prosecution's office – I've been an assistant prosecutor and a prosecutor, and the prosecutor creates the ground rules under which the assistant prosecutors work, and everyone in the office knows it. And if you want to get promoted, you better heave to.  That's the old nut. Anyone can sue anyone for anything. They could sue that the prosecutor made this culture, but then they got to prove it. But you see, the purpose of prosecutorial immunity, among other things, is to – so that the prosecutor can focus his energies on what is the ultimate goal, which is to put the country on the table. on prosecuting people and not in defending lawsuits. If you create a theory that allows any criminal defendant to sue the whole top of the agency and do it in every case, then you've just defeated the primary articulation, the reason for prosecutorial immunity. You've suddenly got your prosecutors dealing with defending civil litigation instead of going out there and doing what they're supposed to be doing. Well, the prosecutors aren't going to do that. Other people are going to do that. Let's say you've got a situation in an office or a culture in an office that it's all right to use lying, jailhouse informants. And then if they come in and they get a conviction, then they get released. It's all right to use people. Come in and testify, and you know that they're lying. That's all right. They don't tell you they're lying, but you know damn well they are. There's a lot of examples of that. You agree with that? It's wrong, and it's shocking. Okay. But this emanates from the top, you see. It emanates from the top, from the culture. We want convictions. We want this. We want to clean this up. We don't care what you do. You want to use lying, jailhouse informants, go ahead and do it. And then you're telling us now that the people at the top have got prosecutorial immunity? It's prosecutorial immunity. Because everything they do has got to do with prosecution. Not necessarily everything, but if it has to do with how people are treated. They go to the bathroom, but I mean, I'm talking about the work they do in the office. If it has to do with people getting convicted, and it doesn't have anything to do with the whodunit stage of a crime. Now, you could make a good example. You could come up with a good example, I think, where you wouldn't get prosecutorial immunity if you're talking about a prosecutor who's doing something to set a person up at the whodunit stage. We don't know who did this crime. We don't have probable cause to arrest anyone to use the Buckley formulation. I think that's a different case. What is administration in your construction of Buckley and the other cases that is not related to prosecution? Employer-employee relations. That's the context. Okay. So what happens if the head prosecutor in the office hires somebody? Is that administration? In the abstract sense, yes. And what about fires somebody? Is that administration? In the abstract sense, yes. Okay. So let me push that, because you can probably guess where I'm headed with this. He fires some guy because the guy says, you know, this office just stinks. This office is suborning perjury. I'm not going to put up with it. I'm not going to try my cases that way. And the head of the office says, well, you know, see that road out there? Bye. Or he hires somebody from another office who has a reputation for being a real gunslinger who will get his prosecutions successfully done based on perjured testimony. So he's hiring and firing based upon these criteria, and everybody knows it. Now, is that immune, not immune? I mean, where does this fall? Judge Fletcher, I would have no problem with that at all, saying that that's administrative and not prosecutorial, because we're not immune. Okay, but then so then one of these guys, let's say we hired this guy, knowing how he behaves. He comes in and he does exactly what he was hired in a sense to do, that is to say suborn perjury. All of a sudden he's getting convictions where nobody else could get them. And now there's a suit brought against the administrator of the office. Is he absolutely immune or not? He's immune. For the same reason that the individual prosecutor is immune. But I thought you just told me that the hiring process was something for which he was only qualifiably immune. But now I say he hired the guy and he now did exactly what he was hired to do, and you say, but now he's absolutely immune. Not exactly. I'm analyzing it from a different approach. I'm analyzing it from the point of view of the relationship between the parties to the lawsuit. In the example you were giving, the way I was interpreting your remarks was, you know, what happens if, for example, this employee who doesn't want to convict innocent people gets fired for that reason and then wants to sue for wrongful termination. I think clearly we have a situation where prosecutorial immunity has no place. On the other hand, if your only relationship with the office is you're being prosecuted, that's why you want to sue. You were prosecuting. So the qualified immunity benefits people in the prosecutor's office, but it never benefits people who are subject to the abuses by the prosecutors. That's the rule you're coming up with. Under a 1983 analysis, if their only relationship with the office is as being prosecuted and they can't say, you know, that they did this to me at the whodunit stage where there was no probable cause to arrest me, then yes. Because if prosecutorial immunity doesn't protect against wrongdoing, what does it protect against? You know, you can't analyze it on the basis of, well, this is wrong and therefore you shouldn't be immune. Because, you know, you don't need immunity if you're only doing the right thing. We're just talking about the bad situation where they've done the wrong thing. Got it. And if it pleases you, I'd like to save a few moments at the end. I probably am way out of time already. I don't realize that, but I'm sorry. We might give you a little immunity from time. My name is Patrick Hosey. I represent the appellee, David Gensler, in this case. I don't want to impose my agenda on the Court. If there are any specific questions. Yeah, I've got a specific question. As to the supervisory personnel, and a brief ask the question, what specific constitutional right has the State Department They're, you know, supervisors in an office. They're not doing anything wrong. They're in a situation where wrongdoings are being done. They're not doing anything themselves wrong, except they're running the office, but they haven't done anything to your client. How are they liable under 1983? I would disagree with the analysis that they have not done anything wrong. This is a situation where we have presented evidence in our opposition to the motions for summary judgment, setting forth in declarations and in other court documents from previous cases that this administration, in fact, was using its administrative functions to reward prosecutors who were running afoul. That may be true. And for purposes of this argument, we would assume that is true. But what constitutional right are they? They may be, you know, very poor lawyers and administrators, and they may be involved in this to the extent that they're supervising a rotten ship. But what constitutional right are they individually? Is it as much made by your friend across the aisle that you're not suing them in their official capacity? You're suing them individually under 1983. What constitutional right have they violated? They violated the defendant's rights to a fair trial, and I believe the courts actually addressed this issue in Miranda v. Clark County, involving similar allegations with respect to a public defender's office, an administrator who You're talking about a Sixth Amendment right? In that case, I believe it was a Sixth Amendment right. Here we're dealing with a Fourteenth Amendment right to due process, to have a fair trial, to have a process in place by the administration and the people who are supervising the district attorneys to make sure that they are doing their job to ensure that, in fact, erroneous evidence and manufactured evidence is not being used in order to secure a wrongful conviction. They didn't procure or manufacture any false evidence. They did not do anything individually, according to your friend across the aisle, concerning false They didn't suborn perjury. There's no case You've cited your brief is very, very slim on case citations for support for this proposition. And as a judge, I can tell you pioneering doesn't pay very much. I apologize. I'm sorry. I didn't mean to cut you off. I mean, what There's nothing in classic legal literature that would say that they have violated any rights, constitutional rights. So and you're when you're in the Fourteenth Amendment, you're in a very, very amorphous area now. And so far as a fair trial, they the judge ran the trial. They didn't run the trial. Well, that's that's true. But that's kind of like analogizing it to a poker game. They played the hand in which the defendants played the hand that they were dealt. The judge played the hand that he was dealt. But the card manufacturer, if you will, was putting in cards that were only going to be favorable to one side. And I think when you're doing that and you are intentionally allowing misconduct to occur, encouraging actively encouraging that misconduct throughout the course of your administration, I think that you are liable. There's one other point, if I may, that's important to make a distinction here. There are actually two separate time frames with respect to these individual defendants. And what I refer to as the county individual county defendants, the administrators. And that relates to the pre-1996 conviction conduct. And then again, the post-1996 conduct. He was convicted of second degree murder in 1996. The case was remanded assigned to a new district attorney. We've also alleged numerous allegations against these individual defendants relating to their post-1996 conduct of actively and personally covering up, attempting to manipulate the handling of the investigation into the prosecutorial misconduct of Mr. Long. Okay. So that may be state court crimes that you're alleging. But if Judge Preggerson will allow me, suppose we delegate to you the authority to write the concluding paragraph on the opinion upholding this cause of action for supervisory liability. How would you draft that concluding paragraph so as not to get certiorari granted in this case? And you have to be very specific in naming the constitutional violation because these people are being sued individually. Correct, Your Honor. How would you draft that concluding paragraph? I haven't thought about it in those specific terms, but as I'm sitting here off the top of my head, I would say that a criminally, a criminal defendant has a constitutional right to a fair trial and to have the persons connected with the administration of the prosecution implement policies and maintain policies which are not intended to prevent him from having a fair trial. That's awfully broad. You're bringing in just about everyone under the sun, maybe even the judge. Everyone connected with the trial has to assure him he's going to get a fair trial? No, Your Honor. I think what we're dealing with here, in my opinion, is administrative policies and practices which were initiated, maintained, ratified, and condoned by these individual supervisors. This isn't a situation that we're looking for responding superior to any type of vicarious liability. We're looking for if these supervisors have an obligation to ensure that there are appropriate policies and procedures in place for the administration of their office and they intentionally neglect those duties so as to bolster the conviction rates or enable to secure improper convictions, then they have run afoul as individual defendants and not just as their official capacity defendants. How do you get around the argument that we just heard on the definition of administrative? We know in the abstract that administrative behavior by supervisors is protected only by qualified immunity. I just heard an argument that said, yes, but the qualification is if it's administrative behavior connected to a prosecution or maybe connected to prosecutions in general, that's not the sort of administrative behavior that has only qualified immunity. The only kind of qualified immunity that comes out of administrative behavior is sort of personnel behavior, hiring, firing, procurement, those things. How do you answer that argument? Because your argument, I think, is that their behavior, whether administrative or not, their behavior in administering the office has produced a climate in which we're getting these prosecutorial abuses and that there's a cause and effect. I have no trouble understanding the fact that there may be a cause and effect. You may or may not be able to prove it. But that's your case. How does that get out from under the qualifier that was quoted to us? I think the case law is fairly clear that the administrative functions are not entitled to prosecutorial immunity. It's important to understand that we're dealing with a law. What case law are you referring to? Pardon? What case law are you referring to? That the administration, administrative and, well, public for one. But the question is, what's the definition of administrative? Because the other side says, yes, administrative, but administrative so long as it's not connected to prosecution. I agree that there is a vagary in the law. My concern, of course, with that. A vagary or a vagueness? Vagueness. I apologize. That's okay. My concern with the argument that's coming from the appellants is that it's such an overarching, all-encompassing rule of law that they are trying to incorporate. Stepping back and looking at this, we need to recognize, of course, this is a huge law firm. The purpose behind this office is to prosecute. And they can't say that anything relating to prosecution, no matter how tenuous, is covered under the prosecutorial immunity. That's just too broad. The cases, Milstein, for example, and I apologize. I'm drawing a blank on two other cases I was thinking of. Establish that the administrative functions are separate and distinct from prosecutorial functions. Prosecutorial functions being those acts which are intimately entwined with the presentation of the state's case, rewarding prosecutors for presenting evidence in general, as a general policy, is not intimately entwined with presenting a state's case. I would make the distinction that the administrative function is at sort of a holistic level, whereas the intimately related to the judicial process is on an individual specific level. And here, they want to say that a holistic view should be adopted that anything that these administrators do outside of a civil service hearing with respect to their particular employees is covered under the prosecutorial immunity. And I just don't think that's what this, that's ever been held by any court. Can I come back to the individual Langenbach and the individual O'Brien? Because those are, that's a different line of analysis. Why isn't this so late in the process that this comes under absolute immunity? I understand that if we were back in the early stages before any arrest or anything else, if there's suborning perjury to get testimony to put into the investigative file and so on, then it's only qualified immunity. But why isn't this too late for that analysis? Well, for a couple of reasons. I don't believe that the specific timing of the misconduct is in any way dispositive, although it may be a factor that can be considered. The issue that's been cited is if there is probable cause to arrest, or let me back up, the case is held before there is probable cause to arrest, a prosecutor should not be considering himself to be an advocate of the State. That's investigational. That does not mean that all conduct afterwards, probable cause to arrest, or after the preliminary hearing even. Yeah. Let me make sure where we are. We've arrested Mr. Gensler. Criminal charges have been filed against Mr. Gensler. And we have not yet had the preliminary hearing. That's where we are. That's correct. And it's important to keep in mind, these. And this witness has already been interviewed once by the police. Actually, I think she was interviewed twice by the police. But she already has been interviewed by the police. So this is a second or perhaps third interview. Yes, Your Honor. Okay. Yes, Your Honor. And at that interview, for purposes of it, and the term interview I think I have a problem with, because from my, from the allegations, from my client's perspective, this is more of an interrogation. Well, it's trial prep. Well, I don't believe that it is. Because my opinion, you know, trial prep from my experience is taking the evidence that you have available to you and attempting to understand it, evaluate it so that it can be presented in a light most favorable to the position that you are taking. No, every lawyer preps his clients to present their testimony in a light most favorable to their position. And you have, you tell clients to emphasize this and play down that. And if someone asks you this, tell them that. If it's, you know, you're not telling them lie, but you're telling them how to tell their story. And the main problem I have with your case on the actual situation here is it doesn't make any difference to me whether it's before a preliminary hearing or at trial. But he would, suppose he would have done this at trial. He would have told Ms. Flanders, listen, lie about this and, you know, we'll take care of you. What's the difference if he does that at trial or before the preliminary hearing? Why should it make a difference? Well, it makes a difference because in one situation you're dealing with the creation and discovery of new evidence. Literally, the man who died. Well, he's lying at trial, too. He's lying. He's telling her to lie at trial, too. That's new evidence. Correct. Maybe she testified at the preliminary hearing to ABC. Now he tells her at trial to testify to X, Y, Z. If the intent of the, if the intent is not to, well, let me put it this way. If the intent is to destroy the evidence and it is done at a time, I don't think that the fact that it happens immediately outside of the courthouse doors, walking in, really has that much relevance to the analysis. I think it's what it is that he is doing. Well, is your position that any subordination of perjury is not presenting the State's case? Because that's not the law. The law is that like it or not, and it's been suggested it's outrageous, and it is, but for higher policy reasons they say that this is a prosecutor who tells a client, a witness to lie when he's presenting the case is immune. Now, what difference should it make if he does that at the actual trial going before the jury or before a hearing? If he's presenting the case to the State and he's telling the witness to lie, what difference should it make? Because to, prior to the establishment of probable cause at the hearing, at the preliminary hearing. No. Probable cause is not, for purpose of binding over the client. But probable cause has been met by the arrest already. There's been a warrant issued for his arrest. Because at this point, the point that we're talking about, I think the distinction is we are still attempting to discover additional information and evidence, and that's really the issue we have in this case. The Skye Flanders testimony, the supporting declarations and testimony we provided in opposition to the motion for summary judgment clearly establishes that she was presenting new information and evidence to these men at the early stages of the case. This was not a situation where for all intents and purposes the testimony had been memorialized and cast in stone and there had been previous testimony. This was information that this was the first time that she was talking to these people. This was the first time this information was coming to light and being discussed. And this is the time that they were using their investigative techniques in order to create perjured testimony. I think that the timing, the specific timing, as I said, is not necessarily dispositive, but I do think it is a factor that goes into the court's analysis. Okay. Are there any other questions before us? Nothing else. Thank you. Thank you. The timing was dispositive to Judge Keefe, who drew an artificial line and said that before the preliminary hearing these actions are not absolutely immune, but the same actions which were alleged in other paragraphs of the complaint are absolutely immune and were dismissed. Justice Cowan, you asked, and I think Justice Fletcher, too, about labels and timing and how you approach this. I think the case of Cousin v. Small, a Fifth Circuit case decided in March of this year, which I cited in a letter to the court last week, is informative because there, as Justice Cowan suggested to me, why isn't this an investigatory type process? Aren't they acting like a detective, generating new facts? And that was the argument made by the plaintiff in the Cousin case, and it was rejected because the court found that at the point in the proceedings where the suspect has been identified, has been arrested for probable cause, that the district attorney in that case is accused of perjury and that can never happen. You know, I read the Cousin case. The Cousin case, let me back off for just a minute. Obviously, the doctrine of absolute immunity for prosecutors, as with other doctrines of immunity, both absolute and qualified, depends for its successful operation on those who are immune, particularly those who are absolutely immune. As a critical quo, the law immunizes them on the assumption that they will behave properly. What do we do, if anything, when we have some plausible showing, not just of an individual rogue prosecutor who has fouled up, but a systematic failure in a prosecutorial office? In other words, when the trust has been betrayed. Well, I'm not here addressing a systematic approach. I'm dealing with Mr. Longenbach's actions in this one case. I'm asking you a somewhat different question. Yes, and the courts have grappled with that issue. What happens when absolute immunity will protect a prosecutor from alleged subordination and perjury? And the courts have recognized that there are other remedies available, and those remedies are the threat of criminal prosecution against the prosecutor, the professional discipline that might happen, or the voters may turn out the elected district attorney. All three of those things happen in this case. There was criminal prosecution of Mr. Longenbach. There was professional discipline of Mr. Longenbach. And the voters turned out Mr. Finks in the subsequent election. So there are other remedies where absolute immunity protects a prosecutor from alleged acts of perjury. So we get punishment, but people who have been actually directly injured have no compensation. That's the system. And in Embler, they say, to be sure, the immunity that does leave the genuinely wrong defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty, but the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. Yeah, well, obviously, the Supreme Court has its own assessment as to both sides and the likely behavior of a prosecutorial office that is humanized to this enormous degree. And I'm sure that the rule that the Supreme Court has given us will change if it can be shown that repeatedly offices protected to this degree violate that trust. I mean, we're not in a position to make any law. We're just applying the law. But it seems pretty clear to me that the law that the Supreme Court has given us is dependent upon the good faith of prosecutorial offices. I agree with you. Anything else? Thank you. Thank you. All right. The matter is submitted. Oh, excuse me. Oh, yeah. I gave you immunity. Go ahead. I appreciate the immunity. I just wanted to bring us back to the fact that the district judge actually limited the denial of immunity to my clients to three specific issues, not the broader issue that we've been talking about, but the three specific issues are at paragraph 74, 81, and 82 of the first amendment complaint. One allegation is that Ms. Logel was provided with immunity from perjury, and that clearly is something that can only happen in the prosecutorial phase of the case. A police officer can't immunize somebody. It's intimately connected with the prosecutorial side or the judicial side of the case. Number two, that the three individuals were aware that Mr. Longenbach had promised them that he would get a conviction. I don't know what you do with that because I don't know what amendment says that a prosecutor can't tell his boss that he hopes to get a conviction. I don't see a constitutional deprivation there. And number three, that the defendants were aware of Mr. Longenbach's ploy of recusing people, recusing attorneys. And again, recusal is something a prosecutor can ask for, a judge can order, but it's not anything a police officer can do outside the prosecutorial side of the case. It's got to be intimately associated with the judicial phase of an action. Thank you for the additional time. Thank you. Pick up the next matter. Thank you.
judges: Pregerson, Cowen , W. Fletcher